**James Allen JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00200–CR.**

Court of Appeals of Texas, El Paso.

Aug. 25, 1982.

Discretionary Review Granted Dec. 15, 1982.

Hirsch & Bartley, Kevin R. Bartley, Odessa, for appellant.

Vern F. Martin, Dist. Atty., Robert L. Sutphen, Asst. Dist. Atty., Midland, for appellee.

Before PRESLAR, C. J., and WARD and SCHULTE, JJ.

OPINION

SCHULTE, Justice.

This is an appeal from a conviction for carrying a weapon on licensed premises.

The jury assessed punishment at two years confinement. We reverse.

In three grounds of error Appellant complains of the trial court's refusal to instruct the jury on the defensive issues of duress, necessity and self-defense. The facts, as recited in Appellant's brief, were virtually undisputed at trial, even by the testimony of the mother of the individual killed during the incident.

Two weeks prior to the alleged offense, the Appellant and the deceased, Wilbur Williams, fought over the results of a dice game, Appellant apparently emerging the victor. He actively avoided Williams for the next two weeks, having heard from various sources that Williams was after him with a loaded shotgun and .45 caliber pistol. The accuracy of this rumor was confirmed by the testimony of Williams' mother, Mrs. Brown. She further testified that her son probably would have shot Appellant if he had found him. Appellant was also aware that Williams owned and frequently carried such weapons. This was corroborated by a county court judgment and various police reports dealing with other weapon offenses involving Williams. Appellant had also been informed that Williams' brother, Leroy Jackson, had been released from prison and had joined Williams in his search for revenge.

On the night of the alleged offense, Appellant went to King's Bar with a girlfriend, Aletha Sorge. He was unarmed, but Sorge had her own .22 caliber pistol with her. They separated, Sorge going alone to Price's Bar, down the street. There she saw Williams, Jackson, and Mrs. Brown. Before she could leave to warn Appellant, Appellant entered the bar. The opposing parties were seated at the front door. Appellant saw them but felt he was safer in a crowded bar than alone outside. He continued through the bar and took a seat with Sorge at the rear, his back to the wall. He was still unarmed.

Wilbur Williams approached Appellant's table and told him he wanted to talk to him. Williams then returned to the front of the bar. Sorge passed her pistol to the Appel-lant. He pocketed it, went to Williams, and expressed his view that their difficulties were over. Leroy Jackson approached from the side and struck the Appellant. Williams then picked up a chair and struck the Appellant, knocking him to the floor. They continued to assault the Appellant with chairs and kicks, driving him to the rear wall of the bar. This sequence of events was corroborated by the testimony of the deceased's mother and the bartender.

Reaching the rear of the bar, Appellant had nowhere to retreat and, according to his testimony, felt that he was in danger of death or serious bodily injury. He drew the pistol and fired, killing Wilbur Williams and wounding Jackson, Mrs. Brown, and Charles Patterson, a bystander. Mrs. Brown had come up to the final site of the fight. Appellant testified that he saw her reaching into her purse. He also testified that it was common knowledge that she carried a pistol in her purse. Mrs. Brown denied having the gun in her purse at that time, but admitted carrying one in that fashion and testified that it was common knowledge that she did so.

In Ground of Error No. One, Appellant asserts his right to a charge on the affirmative defense of duress. Under the facts of this case, a reading of the plain language of Penal Code Section 8.05 would seem to support the Appellant's position. The State, however, correctly points to the fact that opinions dealing with Section 8.05 all involve situations in which the defendant is compelled to do an illegal act which is desired by the one exerting the threats or force. That is not the case here. This interpretation is further supported by reading Section 8.05 in conjunction with Sections 9.22 (necessity), and 9.31 and 9.32 (self-defense). Appellant's position would entail an unnecessary overlap in these provisions. His defensive theory was very clear and properly subject to scrutiny under the latter provisions, in lieu of Section 8.05. Ground of Error No. One is overruled.

Ground of Error No. Two asserts the defense of necessity, and Ground of Error No. Three alleges a right to a charge on

self-defense. The State's only response is that necessity is unavailable in Texas as a defense to unlawfully carrying a weapon on licensed premises, there being a legislative purpose to exclude such a justification. The State further contends, without supporting authority, that self-defense is available only under a charge of using force against another, and not as a response to a charge of the "administrative" offense involved here. Under the facts of this case, the State's position is without merit.

■ The first two requirements of Section 9.22 are that the actor reasonably believe the proscribed conduct is necessary to avoid imminent harm, and that the desirability and urgency of avoiding the harm clearly outweigh, by ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the actor's conduct. The testimony from both sides clearly demonstrated an adequate, reasonable belief of imminent harm on the part of the Appellant. It is also clear that the anticipated harm involved potential death or serious bodily injury. Under the time frame involved, and the location of the parties, this clearly outweighed the statutory proscription of Appellant's taking charge of the pistol.

The third requirement of Section 9.22 is that there be no legislative purpose to exclude the justification, which plainly appears in the statute allegedly violated. The State contends that this requirement was not met and relies upon *Ewalt v. State*, 363 S.W.2d 279, 282 (Tex.Cr.App.1963), and *Roy v. State*, 552 S.W.2d 827 (Tex.Cr.App.1977). Both cases express the view that the existence of threats or danger is not a defense to unlawfully carrying a weapon. Both cases are readily distinguishable from the present case. In *Ewalt,* the threats were at a much earlier point in time than the offense by Defendant Ewalt and were ambiguous in tenor. In response, the defendant began to carry a weapon generally. In *Roy,* the defendant serviced coin-operated vending machines in what he considered a high-crime area. His practice of customarily carrying a pistol on his person or in his truck was not in response to specific threats of violence.

In this case, the Appellant did not arm himself at all times. He was not armed when he entered the bar. Nor did he arm himself upon immediately seeing the anticipated assailant. It was only immediately before the actual confrontation that he took custody of the pistol. The rule expressed in *Ewalt* and *Roy* is not applicable to this case.

It cannot otherwise be said that a plain legislative purpose exists to deprive Appellant of the defense of necessity under these facts. Appellant has cited a number of cases involving various judicial exceptions or defenses to Section 46.02 of the Penal Code. In addition, the Court of Criminal Appeals, in *Garcia v. State,* 528 S.W.2d 604 (Tex.Cr.App.1975), reversed and remanded for failure to charge on entrapment. While these cases present factual situations and defenses different from those presented here, they do support a conclusion that Section 46.02 and 46.03 are not to be read and applied in isolation from the defenses set out elsewhere in the Penal Code. Under the facts of this case, it was error not to charge the jury on the justification defense of necessity. Ground of Error No. Two is sustained.

■ The State's response to Ground of Error No. Three is unsupported by case authority. There is a certain logic to the proposition that self-defense is more appropriately asserted in response to a charge of violence to another person, while necessity is more appropriate in the case of a victimless crime. It is equally logical however, to excuse all "criminal" or injurious conduct which is within the proper scope of a valid act of self-defense. The facts in this case indicate both real and apparent danger, reasonable fear of serious bodily injury or death, and an inability to reasonably retreat to a position of safety. Had the charge been murder, Appellant would no doubt have been entitled to an instruction on the right to employ deadly force in his own defense. Having an arguable right to exercise deadly force, it would be ridiculous to statutorily preclude him from taking custody of the deadly means of his own deliver-

ance. This is particularly true in this case where the Appellant was not already in possession of the weapon. He acquired it at the last reasonable opportunity to do so and did not fire it until the assault was well under way. Under these facts, it was error not to charge the jury on self-defense. Ground of Error No. Three is sustained.

The judgment is reversed and cause remanded for new trial.