James BOGET, Appellant,

v.

The STATE of Texas.

No. 632–01.

Court of Criminal Appeals of Texas.

May 1, 2002.

---

1. 13 S.W.3d 791 (Tex.Crim.App.2000).

Vincent D. Callahan, San Antonio, for Appellant.

Enrico B. Valdez, Asst. DA, San Antonio, Matthew Paul, State's Atty., Austin, for State.

### OPINION

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, HOLCOMB, and COCHRAN, J.J., joined.

James Boget was charged with criminal mischief for damaging a truck. At his trial, Boget introduced evidence that the vehicle was damaged while he was defend- ing himself from its driver. Boget's re- quested jury instruction on self-defense was denied. The State argues that Boget was not entitled to the instruction because self-defense is not available unless a defen- dant is charged with an offense involving force against another, and criminal mis- chief is not such an offense. We disagree and hold that self-defense is available in a prosecution for criminal mischief where the mischief arises out of the accused's use of force against another.

### Facts and Procedural History

On August 10, 1998, Maria Palacios drove to the Bandera Oaks apartment complex to look for her seventeen-year-old daughter Iaida. Iaida had fled from her mother because of an argument between the two.

Palacios arrived at the complex with her son sometime after 11:00 p.m. Palacios spotted her daughter in the parking lot and drove after her. When Iaida saw Palacios, she ran upstairs to a relative's apartment. Palacios parked her truck and sent her son to retrieve Iaida.

According to Palacios, James Boget ap- proached the truck while she was waiting for her daughter and son. She testified that Boget began yelling at her in English but that she could not understand him because she only speaks Spanish. Palacios said Boget then hit the truck windshield with his flashlight, breaking the glass on the driver's side. Frightened, Palacios started her truck and turned toward the exit. She testified that Boget then broke her truck's side windows.

Upon hearing the commotion, Iaida rushed down the stairs and ran after her mother. Palacios testified that as she pulled over to pick up her daughter, Boget shattered the rear windshield with his flashlight. Palacios then fled the complex

with her daughter. Both women sustained injuries from the flying glass.

Meanwhile, Officer Lawrence Saiz had been dispatched to Bandera Oaks because he received a report about a suspicious person knocking on a door at the complex. Upon arriving, he met with Boget and another witness who told Saiz that Palacios was responsible for the disturbance. Boget then informed the officer that Palacios was intoxicated and pointed out the direction in which Palacios had left. Saiz drove after Palacios and eventually pulled her over on suspicion of drunken driving. After observing her, Saiz determined that Palacios was not intoxicated. Because Palacios did not speak English, an additional officer was dispatched to the location to take her statement.

After hearing Palacios' story, Officer Saiz requested that Boget be escorted by police to Woodlawn, the road where Palacios was pulled over. Boget was then questioned by Saiz about the truck's broken windows. Boget told the officer that he saw the truck driving around the parking lot and suspected the driver was responsible for causing the disturbance at the complex. Boget said that when he approached the vehicle, the truck "took off" toward him and hit him. The impact caused Boget to hit the front windshield, flip over the top of the truck, and land in the truck bed. According to Boget, he then began hitting the back windshield and rear windows with his flashlight. He got out of the truck when it stopped before exiting the complex. Finding Boget's story unbelievable, Officer Saiz placed him under arrest for criminal mischief.

During trial, the defense offered evidence that Boget had acted in self-defense. Veronica Ramos, the apartment manager, and her husband Chris both testified. Chris testified that they were in their apartment when they heard "squeaking

noise from tires peeling outside. You could hear how they were going very fast." They went outside and saw a truck "speeding around the apartment complex." Both Chris and Boget told the driver to slow down. Chris testified that he saw the truck go towards Boget but he was "not sure if it actually hit him." He testified that Boget was "in front of the truck and he come out to the side of it because they wouldn't stop," and that the truck was "taking off right here like they're going to hit him." Chris stated that it seemed like the truck was driving directly at Boget and that the truck almost hit Boget.

Veronica testified similarly. She stated that the truck was "driving very fast" and "very recklessly"; it was "skidding out the tires." She stated that she and Boget both "attempted to approach the truck; tell them several times to stop, and they refused to do that." She said that "[w]hen Mr. James Boget ran in front of the truck, she almost rammed her truck into him." "[S]he just kept charging with the truck with [sic] him." She said that, "[a]fter he was standing in front of the truck, he had to-he had to get out of the way because she was trying to ram the truck onto Mr. Boget and myself." Boget did not take the stand at trial.

The judge refused Boget's proposed instruction on self-defense, finding the defense unavailable to a defendant who does not testify. Boget was subsequently convicted of criminal mischief and appealed the denial of the self-defense charge. Boget argued that he was entitled to a charge on self-defense even though he did not testify. The State did not dispute his argument. However, it claimed that Boget was not entitled to the charge because self-defense is available only to those defendants who have been charged with an offense against a person. Since Boget was

charged with criminal mischief, he could not argue self-defense.

The Court of Appeals agreed with Boget that a defendant need not testify in order to be entitled to an instruction on self-defense.[1]  The court also found that self-defense principles apply to all types of criminal responsibility, stating that the availability of the defense "does not depend on the State's decision to charge one particular offense or another."[2]  We granted the State's petition for discretionary review to decide whether a jury charge on self-defense is available when a defendant is charged with an offense other than one involving force against another.

## Analysis

■ Section 9.31 of the Penal Code provides that "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force."[3]  According to the State, self-defense "by its own terms" involves the use of force against another person. The State argues that criminal mischief, on the other hand, requires the intentional or knowing damage or destruction of another's tangible property.[4]  It concludes that because the offense Boget was charged with did not involve force against another,

he was not entitled to a charge on self-defense.

The State bases its argument on our holding in *Johnson v. State.*[5]  There, we found that a self-defense charge is available only when a defendant is charged with an offense involving the use of force against another.[6]  The defendant in *Johnson* was involved in a bar-room gun fight and was subsequently convicted of unlawfully carrying a handgun on licensed premises.[7]  Johnson had gone to the bar with his girlfriend, who was carrying her handgun.[8]  When he entered the bar, Johnson spotted Wilbur Williams.  Johnson had previously been in an argument with Williams and heard that Williams was "after him" with a loaded shotgun and pistol.[9]  After Williams told Johnson he wanted to talk to him, Johnson pocketed his girlfriend's gun.[10]  Johnson was later attacked by Williams and Williams' brother.[11]  Johnson brandished his girlfriend's gun and fired it several times, killing Williams and wounding several others.[12]

On appeal, Johnson argued that the trial court erred in refusing to submit jury instructions on the defensive theories of justification and self-defense.[13]  We held that the trial court did not err in denying the self-defense instruction because "appellant was not charged with an offense involving the use of force against another, so self-

---

1.  *Boget v. State,* 40 S.W.3d 624, 626 (Tex.App. San Antonio 2001).

2.  *Id.*

3.  TEX. PENAL CODE ANN. § 9.31 (Vernon 1997).

4.  *See* TEX. PENAL CODE ANN. § 28.03 (Vernon 1997).

5.  650 S.W.2d 414 (Tex.Crim.App.1983).

6.  *Johnson,* 650 S.W.2d at 416.

7.  *Id.* at 415; *Johnson v. State,* 638 S.W.2d 636 (Tex.App.El Paso 1982).

8.  *Johnson,* 638 S.W.2d at 637.

9.  *Id.*

10.  *Id.*

11.  *Id.*

12.  *Id.*

13.  *Johnson,* 650 S.W.2d at 415.

defense by its very terms affords no justification for the conduct alleged." [14]

In its opinion, the Court of Appeals found that "*Johnson* is clearly distinguishable from Boget's case ... Johnson did not use force at all, he merely possessed a firearm. Johnson's conduct is clearly distinguishable from Boget's conduct. Boget was actually using force against another who happened to be inside a vehicle." [15] The court also found that "[n]either *Johnson* nor any case our research revealed holds, as the State argues, self-defense is available only in prosecutions for crimes against persons and is not available in prosecutions for property crimes." [16]

We find the court's factual distinctions imprecise. Both Boget and Johnson used force against another in response to an alleged attack. Both were charged with an offense other than an offense against the person. But in Boget's case, the criminal mischief was part and parcel of his "use of force against another." In other words, without Boget's use of force there would have been no criminal mischief. In contrast, Johnson's offense did not arise out of his use of force. Even if Johnson had not shot Williams, he could have still been charged with carrying a handgun on licensed premises.

Additionally, the Court of Appeals is incorrect in concluding that our opinion did not limit the availability of self-defense to crimes against the person. *Johnson* held that a defendant is entitled to a self-defense charge only when he is charged with

an offense involving use of force against another. [17] This clearly excludes those defendants charged with an offense involving the use of force against property. Our task now is to determine whether our holding in *Johnson* was unnecessarily broad. To do this, we turn to the self-defense statute itself.

■ When we interpret statutes we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. [18] At issue is not the definition of the word "another", but rather what it means to direct force "against" another. The plain language of the statute fails to give us an answer.

■ When the language is ambiguous, *Boykin* permits us to look to extratextual factors. [19] Our analysis will focus on the common law of self-defense, the legislative history of the Texas statute, the law of self-defense in other jurisdictions, and the object the legislature sought to attain when it enacted the statute.

### The Common Law

Self-defense is popularly thought of as the natural right of individuals to act in concert against the threat of others. [20] The assumption is that there is a natural right to preserve oneself from any kind of threat made against person or property with whatever force seems necessary at the time. [21] As Blackstone said of self-defense:

---

14. *Id.* at 416.

15. *Boget,* 40 S.W.3d at 627.

16. *Id.*

17. *See Johnson,* 650 S.W.2d at 416.

18. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991) (*citing Camacho v. State,* 765 S.W.2d 431 (Tex.Crim.App.1989)).

19. *Boykin,* 818 S.W.2d at 785–86.

20. Frederic Baum & Joan Baum, The Law of Self Defense 1 (Legal Almanac Series No. 64, 1970).

21. *Id.* at 15.

Both the life and limbs of a man are of such high value, in the estimation of the law of England, that it pardons even homicide if committed se defendo, or in order to preserve them. For whatever is done by a man, to save either life or member, is looked upon as done with the highest necessity or compulsion.[22]

The commentators have differing views concerning whether self-defense is an appropriate defense to any crime committed in defending oneself. Lafave and Scott suggest that self-defense is appropriate only for crimes committed against the person in defending oneself.[23] Hall and Mueller, on the other hand, feel that a person can use self-defense to justify other offenses-including offenses against property.[24]

In spite of the conflicting authority, self-defense has generally been limited to situations in which the defendant is charged with an assaultive crime.[25] This is largely because the rules of self-defense evolved from the law on homicide.[26] The connection of self-defense to assaultive crimes is clear in light of the fact that even some modern penal codes limit discussion of self-defense to the sections on homicide and assault and battery.[27] This factor weighs against extending self-defense to offenses other than offenses against the person.

*Legislative History*

Texas followed this model until 1974, when the entire Penal Code was rewritten.[28] The Legislature removed self-defense from the section of the Penal Code involving offenses against the person and placed the defense in Title 2 of the Code entitled "General Principles of Criminal Responsibility."[29] The Court of Appeals suggested that the presence of self-defense in this general section means that the justification applies to all types of criminal responsibility.[30] The drafters' commentary to an earlier version of our current Penal Code supports the court's position.

The revision of the Penal Code was the culmination of several years of work by various committees composed of defense lawyers, prosecutors, and scholars.[31] In

---

**22.** 1 WILLIAM BLACKSTONE, COMMENTARIES *130.

**23.** WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW 455, n. 2 (2d ed. HB, West Publishing Co.1986).

**24.** JEROME HALL & GERHARD MUELLER, CASES AND READINGS ON CRIMINAL LAW AND PROCEDURE 663 (2d ed., Bobbs Merrill 1965).

**25.** GEORGE E. DIX & M. MICHAEL SHARLOT, CRIMINAL LAW 415 (4th ed., West/Wadsworth 1999).

**26.** MORRIS PLOSCOWE, CRIME AND CRIMINAL LAW 107–08 (The National Law Library Vol. 2, 1980).

**27.** *See Id.* at 108. *See, e.g.,* CAL.PENAL CODE § 195 (Deering 2001); MISS.CODE ANN. § 97–3–15 (2001); NEV.REV.STAT. ANN. § 200.200, 200.275 (2001); N.M. STAT. ANN § 30–2–7 (Michie 2001); OKLA. STAT. tit. 21 § 643, 733 (2000); S.D. CODIFIED LAWS § 22–16–30, 22–16–35, 22–18–4 (Michie 2001); VT. STAT. ANN. tit.13 § 2305 (2001).

**28.** *See* Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.

**29.** *Compare* Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974 *with* articles 483, 567–70 of the 1856 Penal Code; articles 490–92, 569–72 of the 1879 Penal Code; articles 593–95, 674–77 of the 1895 Penal Code; articles 1014–16, 1104–05 of the 1911 Penal Code; and articles 1142–43, 1221 of the 1925 Penal Code.

**30.** *Boget,* 40 S.W.3d at 627.

**31.** *Adopting a New Penal Code: Hearings on S.B. 34 Before the Senate Subcommittee on Juris.,* 63d Leg., R.S. (Feb. 14, 1973; testimony of Judge Sharpe, Chairman of the State Bar Committee on the Revision of the Penal Code) (available at the State Library Reference Room).

1965, the State Bar of Texas organized the first committee to work on the Penal Code, chaired by Dean Page Keeton.[32] The Committee took every article in the then existing Code and keyed it to the Model Penal Code to achieve uniformity in format.[33] In 1970, the Committee produced a draft of the Penal Code with commentaries.[34] This draft was known as the "blue back" version of the Code.[35] Though this draft was never voted on by the Legislature, the majority of commentaries appearing in the "blue back" version were still valid at the time the 63rd Legislature conducted hearings on the adoption of the new Code.[36] Although some changes were made to § 9.31 between the creation of the "blue back" draft and our modern Penal Code, these changes are irrelevant for the purposes of our discussion.[37] Since the portion of the statute with which we are concerned was enacted without substantive change, the drafters' comments are the most important expression of its legislative history.[38]

In his commentary to the draft concerning the new chapter on justification, Dean Keeton explained:

With the inclusion of proposed Chapter 3 in the new Texas Penal Code our written law will for the first time specify in one place every variety of conduct otherwise criminal that is justified. Unlike the present penal code, which distinguishes types of justifiable conduct mainly on the basis of whether it causes death or injury, Chapter 3 creates a comprehensive series of descriptive categories—for example, protection of persons, law enforcement, special relationships—and then deals with problems of justification peculiar to each category. Of course these categories are not independent of each other because a given fact situation may involve conduct justifiable as a public duty, in self-protection, and to prevent crime, and Chapter 3 makes clear the interrelationship of each category.[39]

Keeton's comment strengthens the appellate court's conclusion that our current self-defense statute provides justification for offenses beyond the assaultive crimes. The removal of self-defense from the sections of the Code concerning assault and murder and its placement in the Code's general section on justification is perhaps the strongest argument against limiting self-defense to assaultive crimes only.

### The Law in Other Jurisdictions

Several jurisdictions permit a defendant charged with a crime other than an assaultive offense to submit a self-defense charge to the jury. For example, jurisdictions with self-defense statutes similar to our own have made the charge available to defendants indicted for crimes against

32. *Id.*

33. *Id.*

34. *Id.*

35. *Id.*

36. *Id.*

37. *Compare* TEX. PENAL CODE ANN. § 9.31 (Vernon 1997) *with* State Bar of Texas Comm. on the Revision of the Penal Code: Texas Penal Code Revision Project, Justification Excluding Criminal Responsibility, First Draft 17–18 (July 10, 1970) (on file with the Tarlton Law Library at the University of Texas at Austin).

38. *See Aguirre v. State*, 22 S.W.3d 463, 471 (Tex.Crim.App.1999).

39. State Bar of Texas Comm. on the Revision of the Penal Code: Reports and Drafts on Justification, Report on General Principles of Justification, First Draft 19 (February 3, 1969) (Committee Comment to Proposed Ch.3) (on file with the Tarlton Law Library at the University of Texas at Austin).

property.[40] New York courts limit the availability of self-defense to offenses that involve the use of force, but have not discussed its applicability to property crimes.[41] Similarly, Tennessee has found that the defense is limited to the threat or use of force against another person by a criminal defendant, yet has not addressed whether the force must actually reach the individual it is directed against.[42] Finally, at least one federal court has stated that an intentional act of damage or destruction may be analogized to an assault and is therefore justified if done in self-defense.[43] Because the authority cuts both ways, we decline to find any one case dispositive.

### The Object Sought to be Attained

As Dean Keeton pointed out in his commentary, the general rule is that force is justified when necessary to protect against another person's threat or use of unlawful force.[44] The law recognizes that the right of self-preservation entitles a person to defend himself even to the point of taking the life of his assailant if necessary.[45]

■ Although homicide may be justifiable in an appropriate situation, the gener-al rule is that a person should use only such force as is necessary in defending himself.[46] Without question, our legislators sought to embody this principle when they enacted § 9.31. At a hearing before the Subcommittee on Criminal Jurisprudence, the Director of the State Bar Committee on the Revision of the Penal Code stated, "Of course deadly force is authorized, but the scale slides towards as little force as is necessary."[47] Further, the statute explicitly states that a person may use force against another "when and to the degree" he reasonably believes the force is immediately necessary for self-preservation.[48]

■ The duty of this Court is to effectuate the intent of the statute. In this case, that means encouraging the use of restraint in defensive situations. A rule that allows a charge on self-defense where a person kills another, but prohibits the defense when a person merely damages the other's property is inconsistent with the purposes of the statute.

For instance, assume a person is about to be run down by a speeding car. If she

---

**40.** *See Seibold v. Alaska,* 959 P.2d 780, 781–82 (Alaska Ct.App.1998); *State v. Grass,* 126 Ill.App.3d 540, 81 Ill.Dec. 693, 467 N.E.2d 393, 395, 396–97 ([5th Dist.]1984); *State v. Grassl,* No. 97–3569–CR, 220 Wis.2d 358, 582 N.W.2d 504 (App. [3d Dist.] 1998).

**41.** *See People v. Pons,* 68 N.Y.2d 264, 508 N.Y.S.2d 403, 501 N.E.2d 11 (1986).

**42.** *See State v. Goins,* No. M1998–00758–CCA–R3–CD, No. 01C01–9809–CR–00360, 2000 WL 218206, 2000 Tenn.Crim.App. LEXIS 158 (Tenn.Crim.App. [Knoxville] 2000).

**43.** *United States v. Young,* 464 F.2d 160, 164 (5th Cir.Miss.1972), appeal after remand at 482 F.2d 993 (5th Cir.Miss.1973).

**44.** State Bar of Texas Comm. on the Revision of the Penal Code: Reports and Drafts on Justification, Report on General Principles of Justification, First Draft 55 (February 3, 1969) (Committee Comment to Proposed Ch. 3) (on file with the Tarlton Law Library at the University of Texas at Austin).

**45.** WILLIAM E. MIKELL, CRIMINAL LAW 44 (Modern American Law Vol. III., 1914).

**46.** *See* 6 AM.JUR. 2d *Assault and Battery* § 60 (2000).

**47.** *Adopting a New Penal Code: Hearings on S.B. 34 Before the Senate Subcommittee on Juris.,* 63d Leg., R.S. (Feb. 14, 1973; testimony of Bill Reid, Director of the State Bar Committee on the Revision of the Penal Code) (available at the State Library Reference Room).

**48.** *See* TEX. PENAL CODE ANN. § 9.31 (Vernon 1997).

brandishes her pistol and fires at the front tires of the car to stop the vehicle, she will not receive a charge on self-defense should she be indicted for criminal mischief. On the other hand, if she shoots the driver she is entitled to a charge on self-defense in a murder prosecution. This result is contrary to the object of the statute because it punishes the individual who used the least force possible in self-preservation.

In Boget's case, had his flashlight gone through the window and hit Palacios, he would be entitled to a charge on self-defense in an assault prosecution. It would be illogical to deny him the instruction simply because his force didn't actually land on Palacios. The relevant inquiry is whether he directed his force against another. We find that under Boget's version of the facts, his force was directed against Palacios.

 The State argues that the defense of necessity is sufficient to protect Boget's interests.[49] We agree that necessity is a valid defense under these facts. However, the availability of the defense of necessity is not determinative. The trial court is required, when properly requested, to charge on every defensive issue raised by the evidence.[50]

Because one of the objects of § 9.31 is to encourage those defending themselves to use only that force which is necessary, this factor weighs in favor of extending self-defense to offenses other than those committed against a person.

### Conclusion

 After weighing the above factors, we conclude that § 9.31 is available in a prosecution for criminal mischief where the mischief arises out of the accused's use of force against another. Although self-defense has its roots in the law of homicide, the above analysis reveals that our statute provides justification for offenses other than those committed against the person. Therefore, we overrule that portion of *Johnson* which holds self-defense is a justification only where the defendant is charged with an offense involving the use of force against another. The judgment of the Court of Appeals is affirmed.

HERVEY, J., not participating.

---

49. *See* TEX. PENAL CODE ANN. § 9.22 (Vernon 1997); *see also Johnson,* 650 S.W.2d at 416.

50. *See Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App.1987); *see also Warren v. State,* 565 S.W.2d 931, 933–34 (Tex.Crim.App. [Panel] 1978).