JUBB V. STATE

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-246-CR

DAVID EDWARD JUBB APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM  COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant David Edward Jubb appeals from his conviction for harboring a runaway child.  In two points, he argues that the evidence was legally and factually insufficient to support the verdict and that the trial court erred by failing to charge the jury on the defense of necessity.  We affirm.

Factual and Procedural Background

Appellant met B.C., a minor who lived with his father in Corpus Christi, through a gay-themed Internet chat server.  When B.C. performed at a choir concert in San Antonio on February 23, 2002, Appellant and codefendant Christopher Adams drove from their apartment in Fort Worth to San Antonio to meet B.C. and attend the concert.  Immediately before the concert, B.C. told Appellant that he intended to run away from home and that he wanted to return to Fort Worth with Appellant.  After the concert, Appellant and Adams drove B.C. to their apartment in Fort Worth. 

B.C.’s father correctly deduced B.C.’s whereabouts within hours.  B.C.’s father obtained Appellant’s phone number, called the number, and spoke to Appellant.  Appellant denied that he even knew B.C.  When Fort Worth police went to the apartment looking for B.C. on February 24, Appellant denied that B.C. was there.  After the police left, Appellant called B.C.’s father and again said that he did not know B.C. and did not know where B.C. was.  Fort Worth police returned to Appellant’s apartment on March 21.  After a brief confrontation, Appellant admitted that B.C. was in the apartment.  The police took B.C. into juvenile custody and arrested Appellant. 

Appellant was charged with the misdemeanor offense of harboring a runaway.  A jury convicted Appellant, and the trial court sentenced him to 180 days in jail.  This appeal followed.

Discussion

Parental consent and notification of law enforcement

In his first point, Appellant contends that the evidence was legally and factually insufficient to support his conviction.  Specifically, Appellant argues that the evidence is legally and factually insufficient to prove (1) that B.C. did not have his mother’s consent to be absent from home and (2) that Appellant had not complied with a statutory defense by notifying a law enforcement agency that B.C. had run away.  We disagree.

Standards of review

Legal sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

Factual sufficiency

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Factual sufficiency of rejected defense

When a defendant challenges the factual sufficiency of the rejection of a defense, we review all of the evidence in a neutral light and ask whether the State’s evidence taken alone is too weak to support the finding and whether the proof of guilt, if taken alone, is against the great weight and preponderance of the evidence.  
Zuliani v. State
, 97 S.W.3d 589, 590 (Tex. Crim App., 2003).

Penal Code § 25.06

The relevant statute is penal code section 25.06, which states in pertinent part as follows:

§ 25.06. Harboring Runaway Child

(a) A person commits an offense if he knowingly harbors a child and he is criminally negligent about whether the child:

(1) is younger than 18 years; and

(2) has escaped from the custody of a peace officer, a probation officer, the Texas Youth Council, or a detention facility for children, or is voluntarily absent from the child’s home without the consent of the child’s parent or guardian for a substantial length of time or without the intent to return.

(b) It is a defense to prosecution under this section that the actor was related to the child within the second degree by consanguinity or affinity, as determined under Chapter 573, Government Code.

(c) It is a defense to prosecution under this section that the actor notified:

(1) the person or agency from which the child escaped or a law enforcement agency of the presence of the child within 24 hours after discovering that the child had escaped from custody; or

(2) a law enforcement agency or a person at the child's home of the presence of the child within 24 hours after discovering that the child was voluntarily absent from home without the consent of the child's parent or guardian.

(d) An offense under this section is a Class A misdemeanor.

Tex. Penal Code Ann.
 § 25.06 (Vernon 2003).

Parental consent

Appellant argues that the evidence is legally and factually insufficient to prove that B.C. did not have parental consent to be absent from home.

B.C.’s parents divorced in 1996.  B.C. lived with his mother in Pennsylvania until 1997, then moved to Corpus Christi to live with his father.  At the time he ran away, B.C. was living with his father, though his parents had decided that he should move back in with his mother at some point in the future. 

B.C. testified that, at Appellant’s suggestion, he called his mother to let her know he was okay when he arrived in Fort Worth.  Appellant testified that he urged B.C. to call his mother but did not ask B.C. about the substance of the conversation. 

Appellant contends that the State failed to prove beyond a reasonable doubt that B.C. did not have his mother’s consent to run away from his father’s home.  But proving that B.C. lacked both parents’ consent to run away is not part of the State’s burden.  Rather, the State must prove that Appellant was 
criminally negligent 
about whether the child was 
voluntarily absent from the child’s home without the consent of the child’s parent; in other words, whether Appellant should have been aware of a substantial and unjustifiable risk that B.C. ran away without his parents’ consent.
  
See
 
Tex. Penal Code Ann.
 § 6.03(d), 
25.06 (Vernon 2003).  Appellant’s own testimony proves that he did not inquire whether B.C. had his mother’s consent to be away from his father’s home.  We hold that the evidence is legally and factually sufficient to support the jury’s conclusion that Appellant was criminally negligent about whether B.C.’s parents consented to his absence from home.

Notification defense

Appellant next contends that the State failed to prove that Appellant had not complied with the statutory defense of notifying a law enforcement agency of B.C.’s presence within twenty-four hours.  Specifically, Appellant argues that he complied with the defense by telephoning the Corpus Christi Police Department and Child Protective Services within twenty-four hours of leaving San Antonio with B.C.

Appellant testified that, after consulting a relative who practiced law in Michigan, he looked up penal code section 25.06 on the Internet and discovered the notify-law-enforcement-within-twenty-four-hours defense. Appellant testified that he called the Corpus Christi Police Department to “report” B.C.  Appellant offered a business record from the phone company that listed his long distance phone calls as proof that he called Corpus Christi police. According to Appellant, the officer who took his call told Appellant that he could not “report” B.C. because B.C. was not listed as a missing person. Appellant testified that he next found a toll-free number for Child Protective Services and called them, too, with a similar result.  According to Appellant, he made these calls within twenty-four hours of leaving the choir concert with B.C. 

Appellant’s testimony about when he made the calls is inconsistent with the phone records he introduced into evidence.  Appellant identified by phone number, duration, and time of day the entry on the phone records that corresponded to his first call to the Corpus Christi police department.  The records list the time and date of the call as 4:25 P.M. on February 25, 2002. B.C. left San Antonio with Appellant after the choir concert, which was held on the evening of February 23.  Thus, according to his own phone records, Appellant’s first attempt to contact a law enforcement agency came almost forty-eight hours after B.C. ran away with him—well outside the twenty-four hour deadline imposed by section 25.06(c)(2).
(footnote: 2)
 We hold that the evidence is both legally and factually sufficient to support the conclusion beyond a reasonable doubt that Appellant failed to notify a law enforcement agency of B.C.’s presence within the twenty-four hour deadline.  We reserve for another day the question of whether CPS is a “law enforcement agency” as Appellant contends.

We overrule Appellant’s first point.

Necessity defense

In his second point, Appellant argues that the trial court erred by failing to charge the jury with the defense of necessity.  We disagree.

Upon a timely request, a defendant has the right to an instruction on any defensive issue raised by the evidence, whether such evidence is strong or weak, unimpeached or contradicted, regardless of what the trial court may or may not think about the credibility of this evidence.  
See Hamel v. State
, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); 
Miller v. State
, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh’g).  A charge on a defensive issue is required if the accused presents affirmative evidence that would constitute a defense to the crime charged and a jury charge is properly requested.  
See Miller
, 815 S.W.2d at 585.  In fact, the trial court must grant the defendant an instruction regardless of whether the issue is raised by the defendant’s testimony alone or otherwise.  
See
 
id
.  If a defendant produces evidence raising each element of a requested defensive instruction, he is entitled to the instruction regardless of the source and strength of the evidence.  
See Hamel
, 916 S.W.2d at 493;  
Brazelton v. State
, 947 S.W.2d 644, 646 (Tex. App.—Fort Worth 1997, no pet.).  When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury.  
See Muniz v. State
, 851 S.W.2d 238, 254 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 837 (1993).  Thus, if the issue is raised by any party, refusal to submit the requested instruction is an abuse of discretion.  
See id
.  When the evidence fails, however, to raise a defensive issue, the trial court commits no error in refusing a requested instruction.  
See  id.

Section 9.22 of the penal code provides that conduct is justified if

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct;  and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code Ann. § 9.22
 (Vernon 2003).

Section 9.22, subsection (1) sets forth a two-prong test that a defendant must satisfy to be entitled to a jury instruction on the defense of necessity. 
 
Pennington v. State
, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref’d).  First, a defendant is required to present evidence that he reasonably believed a specific harm was imminent. 
 
Johnson v. State
, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983), 
overruled on other grounds by Boget v. State
, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002); 
Pennington
, 54 S.W.3d at 857.  “Imminent” means something that is impending, not pending; something that is on the point of happening, not about to happen.  
Jackson v. State
, 50 S.W.3d 579, 594-95 (Tex. App.—Fort Worth 2001, pet. ref’d).  Harm is imminent when there is an emergency situation and it is “immediately necessary” to avoid that harm.  
Id.
  In other words, a split-second decision is required without time to consider the law.  
Id.

Second, a defendant must present evidence that he reasonably believed the criminal conduct was immediately necessary to avoid the imminent harm.  
Brazelton
, 947 S.W.2d at 648; 
Pennington
, 54 S.W.3d at 857.
  “Reasonable belief” means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor.  
Tex. Penal Code Ann
.
 
§ 1.07(a)(42) (Vernon Supp. 2004-05); 
Pennington
, 54 S.W.3d at 857.  As a general rule, determination of the reasonableness of an accused’s belief is a question of fact, and should be viewed from the accused’s standpoint at the time he acted.  
Fitzgerald v. State
, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990); 
Brazelton
, 947 S.W.2d at 648; 
Pennington
, 54 S.W.3d at 857.

Appellant testified that he believed that B.C. was in imminent danger if Appellant did not help him.  He further testified that the “imminent danger” was B.C. running away on the night of the concert and being on the street in a strange city where he had no family, friends, or contacts. 

The problem with Appellant’s testimony is that he was charged with harboring B.C. in Fort Worth, not absconding with him from San Antonio.  At most, Appellant’s testimony is some evidence that he reasonably believed that it was immediately necessary to prevent imminent harm by removing B.C. from San Antonio; it is no evidence that Appellant reasonably believed that B.C. was in danger of imminent harm for the four weeks that Appellant harbored B.C. in Fort Worth.  Nothing in the record suggests that those four weeks presented a continual “emergency situation” that required a “split second decision.”  We hold that Appellant failed to present any evidence on the defense of necessity with regard to the offense for which he was charged and convicted.

We hold that the trial court did not err by refusing to charge the jury on the defense of necessity.  We overrule Appellant’s second point.

Conclusion

Having overruled both of Appellant’s points, we affirm the trial court’s judgment.  
See 
Tex. R. App. P.
 43.2(a).

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 31, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The State’s brief does not comment on the timing of the calls.  At trial, the prosecutor cross-examined Appellant about the timing, but inexplicably concluded that February 25 was the day after February 23.