# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-05-00260-CR

**Michael Hidalgo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3022460, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted Michael Henry Hidalgo of aggravated assault with a deadly weapon, a second-degree felony. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2006). The jury assessed punishment at eighteen years' confinement and a fine of $10,000. Hidalgo raises three points of error on appeal. In his first and second points, Hidalgo asserts that the district court erred by refusing to give jury instructions on self-defense and on assault as a lesser-included offense. In his third point, Hidalgo claims that his trial counsel's failure to object to the admission into evidence of a pocket-knife and an awl constituted ineffective assistance of counsel. We will affirm the judgment of the district court.

### BACKGROUND

On October 12, 2002, at approximately 7:30 p.m., Louis O'Brien parked his airport shuttle van next to the pumps at the Airport Express gas station on Highway 71. He got out and

started to walk inside to buy cigarettes and food. O'Brien testified that before he entered the store Hidalgo pulled up and began to object that O'Brien was blocking the pumps but not getting fuel. O'Brien stated that he held up his hand as if to tell Hidalgo to wait and then entered the store.

O'Brien further testified that while he was paying for cigarettes Hidalgo came inside the store and continued to complain in abusive language, ultimately asking O'Brien to move the shuttle so that Hidalgo could get gas. Hidalgo then approached O'Brien, who was wearing a Supershuttle company shirt, got "in his face," and made a disparaging comment about airport workers. There is some disagreement as to what happened next. According to store clerk Miguel Castelan, O'Brien shoved Hidalgo back a few feet. O'Brien stated that he did not shove Hidalgo, but tried to conciliate him instead. Regardless, the men continued to argue and eventually left the store at Castelan's request.

O'Brien testified that when he and Hidalgo went outside, Hidalgo "got in his face again" and continued to insult him, at which point O'Brien claims that he shoved Hidalgo away for the first time, only to have Hidalgo come back and confront him yet again. According to O'Brien's testimony, after he shoved Hidalgo away a second time, Hidalgo said "I am going to get you, . . . I am going to kill you," then pulled a sharp instrument from his pocket and began to charge O'Brien, who started to back up. O'Brien testified that during this pursuit Hidalgo cut him with the sharp instrument. Evidence presented at trial showed that the cut resulted in a three-inch laceration in O'Brien's abdomen that required numerous staples to close. Castelan testified that when he threatened to call 911 after Hidalgo wounded O'Brien, Hidalgo returned to his vehicle and left the scene.

2

Hidalgo was apprehended pursuant to an arrest warrant on November 13, 2002, while standing next to his truck at the end of his own driveway. During the arrest, Detective Robert Richman approached Hidalgo and identified himself as a police officer, at which time Hidalgo reached into his pocket. Fearing that Hidalgo might be going for a weapon, Richman drew his handgun and ordered Hidalgo to put his hands on top of the car, which he did. Upon conducting a search, Richman found a lockback folding knife in Hidalgo's pocket and saw an awl in plain view on the seat of Hidalgo's truck. Both the pocketknife and the awl were admitted into evidence at trial without objection.

## DISCUSSION

### Instruction on Self-Defense

In his first point, Hidalgo asserts that the district court erred by refusing to instruct the jury on the law of self-defense in the face of apparent danger. *See* Tex. Penal Code Ann. § 9.31 (West 2003). While Hidalgo did not testify at trial, he argues that he was entitled to the instruction based on the testimony of O'Brien and Castelan.

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). This rule is designed to ensure that the jury, not the trial court, decides the relative credibility of the evidence. *Granger*, 3 S.W.3d at 38. A defendant need not testify to raise the defense. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.—San Antonio 2001), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002).

3

The testimony of witnesses, even those called by the State, may raise a defensive issue. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *Shelvin v. State*, 884 S.W.2d 874, 878 (Tex. App.—Austin 1994, writ ref'd). However, although it may happen, it is rare for the issue of self-defense to be raised when the defendant fails to testify. *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). In deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense. *Granger*, 3 S.W.3d at 38.

A person is justified in using force when and to the degree he reasonably believes the force is immediately necessary to protect himself against another person's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(a) (West 2003). A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Whether a defendant's beliefs were reasonable under the circumstances is a fact question for the jury to decide. *Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987). The force used by a defendant must be reasonable from the defendant's point of view. *Cf. Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) ("A person has a right to defend from apparent danger to the same extent as he would had the danger been real; provided he acted upon reasonable apprehension of danger as it appeared to him at the time.").

Because there is no evidence in the record suggesting that Hidalgo reasonably believed that it was immediately necessary to stab O'Brien in order to protect himself from O'Brien's use of force, he was not entitled to a jury instruction on self-defense. *See* Tex. Penal Code Ann. § 9.31(a). While there is evidence that O'Brien shoved Hidalgo twice before Hidalgo wounded

4

O'Brien with the sharp instrument, there is no evidence of actions or words from Hidalgo indicating that O'Brien's conduct put Hidalgo in reasonable apprehension of danger, nor do the circumstances of the incident suggest such an inference. Rather, the evidence in the record reveals that Hidalgo was the aggressor throughout the sequence of events leading up to the stabbing.

While Hidalgo primarily contends that he was entitled to an instruction on self-defense because there is some evidence that O'Brien was the first to use physical force, the evidence also shows that Hidalgo began the aggression by verbally insulting O'Brien and "getting in his face" when he was unhappy with O'Brien's parking. Although Hidalgo's physical aggressiveness and insults led O'Brien to push him away, the evidence demonstrates that Hidalgo's offensive behavior continued undeterred when he immediately returned to confront O'Brien again. Viewing the evidence in the record in the light most favorable to the defendant, we cannot say that Hidalgo's actions, stating that he was going to "get" and "kill" O'Brien and then chasing and stabbing him, reflect that Hildalgo reasonably believed his actions were necessary to prevent an immediate danger posed by O'Brien. Rather, the evidence suggests a continuation and escalation of Hidalgo's aggressive behavior in attacking O'Brien.

In support of his argument that he was entitled to an instruction, Hidalgo refers to *Smith v. State*. 676 S.W.2d 584 (Tex. Crim. App. 1984). In *Smith*, the Court found that a non-testifying defendant was entitled to a jury instruction on self-defense based on witness testimony concerning the words and actions of the defendant. *Id.* at 585-87. But in *Smith*, the evidence showed that the complainant was the aggressor throughout the sequence of events leading up to the defendant's attack on him, that the complainant was holding a gun during the struggle with the

5

defendant, and that the defendant tried to end the confrontation by telling the complainant that he did not want to fight. *Id.* at 586.

Here, we are presented with the opposite scenario. The evidence shows that Hidalgo maintained aggressive behavior leading up to the stabbing, that O'Brien was not wielding a weapon during the struggle (though Hidalgo was), and that Hidalgo escalated the confrontation by telling O'Brien that he was going to "get" him and "kill" him before chasing him down and slicing his abdomen. Because the evidence here presents a situation that is the opposite of the situation in *Smith*, Hidalgo's reliance on that case is misplaced.

Because there is no evidence in the record demonstrating that Hidalgo reasonably believed his actions were necessary to protect himself, Hidalgo was not entitled to a jury instruction on self-defense. *See Reed v. State*, 703 S.W.2d 380, 384 (Tex. Crim. App. 1985). We overrule Hidalgo's first point of error.

**Instruction on Assault as a Lesser-Included Offense**

In his second point, Hidalgo claims that the trial court erred in denying his request for a jury instruction on assault as a lesser-included offense under the charge of aggravated assault with a deadly weapon. A defendant is entitled to a lesser-included offense instruction in the jury charge if (1) the requested charge is a lesser-included offense of the offense charged, and (2) the record contains some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser-included offense. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). In other words, there must be some evidence from which a rational jury could acquit Hidalgo of aggravated assault with a deadly weapon while convicting him of the lesser-included offense of

6

simple assault. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). In making this decision, the court evaluates the evidence in the context of the entire record, but does not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Havard v. State*, 800 S.W.2d 195, 216 (Tex. Crim. App. 1990) (op. on reh'g).

For the purposes of this appeal, we will assume on the facts of this case that simple assault is a lesser-included offense of the State's charge of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.01(a)(1) (defining simple assault); § 22.02(a)(2) (West Supp. 2006) (defining aggravated assault with deadly weapon). With respect to the second prong of the analysis, Hidalgo claims that a jury could conclude that either he had no weapon at all or that the sharp instrument he wielded against O'Brien was not a deadly weapon. However, the record is devoid of evidence that could permit a rational jury to find Hidalgo guilty of only the lesser-included offense (simple assault) under either theory, and Hidalgo has failed to direct us to any evidence supporting either contention. The State, on the other hand, presented evidence that the sharp instrument used by Hidalgo to attack and wound O'Brien was a deadly weapon. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (pointing out that statute merely requires that deadly weapon be one capable of causing death or serious bodily injury in either its actual or intended use). Specifically, the State elicited evidence through the testimony of O'Brien that Hidalgo stated he was going to "kill" him, charged toward him with a sharp instrument, and then slashed his abdomen (an area containing numerous vital organs) creating a "large" laceration requiring numerous staples to close. Additionally, both Officer Brenda Bermudez and Officer Michael Youngs testified regarding O'Brien's statement that Hidalgo had slashed him with a knife. Officer Bermudez testified that,

7

based on her experience, a folding knife used to slash someone is capable of inflicting death or serious bodily injury. Castelan testified that he witnessed Hidalgo wielding a shiny object, capable of cutting O'Brien, that might have been a silver knife or tool. Furthermore, at trial Detective Robert Richman testified regarding the knife seized from Hidalgo's pocket and the awl seized from his truck at the time of his arrest. Richman testified that either instrument used by Hidalgo in the manner described by O'Brien could have caused the laceration in O'Brien's abdomen and that either instrument was capable of causing death or serious bodily injury.

On one hand, we note that the sharp instrument here may not be a deadly weapon per se, and that the injury sustained by O'Brien may not be a serious bodily injury as a matter of law. However, based on this record, Hidalgo has failed to offer any evidence that could permit a rational jury to find that he was guilty of only simple assault under his theory that the sharp instrument used was not a deadly weapon. To receive an instruction on a lesser-included offense, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to the lesser-included offense for the fact-finder to consider before an instruction on the lesser-included offense is warranted. *Bignall*, 887 S.W.2d at 24. Here, a jury instruction on the lesser-included offense was not warranted because there was no evidence presented at trial that could permit a rational fact-finder to find that Hidalgo committed only simple assault on the basis that the sharp instrument used was not a deadly weapon, and there was no evidence suggesting that Hidalgo attacked O'Brien without a weapon. We overrule Hidalgo's second point of error.

**Ineffective Assistance of Counsel**

In his third point, Hidalgo claims that his trial counsel's failure to object on the basis of insufficient foundation to the admission into evidence of the pocket knife and the awl discovered during Hidalgo's arrest constitutes ineffective assistance of counsel. To succeed in his claim, Hidalgo must show that his counsel's representation fell below an objective standard of reasonableness and that he was prejudiced by his counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) (adopting *Strickland* two-prong test). Unless both prongs are satisfied, Hidalgo cannot demonstrate that his conviction resulted from a breakdown in the adversarial process. *Strickland*, 466 U.S. at 687.

Under the first prong, a court reviews the attorney's performance with a high degree of deference. *Strickland*, 466 U.S. at 690; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the appellant must overcome the presumption by a preponderance of the evidence. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 101; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The reasonableness of counsel's challenged conduct is determined in the context in which it occurred and by viewing the conduct at the time in which it occurred. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 101.

The court of criminal appeals has stated that, in conducting our review, we must assume a strategic motive if any can be imagined, and we must conclude that the counsel's performance was deficient only if it was so outrageous that no competent attorney would have

9

engaged in it. *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). This level of deference is warranted because "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Strickland*, 466 U.S. at 690. This deferential standard balances the protection of these important policy interests with the protection of each defendant's fundamental Sixth Amendment rights.

An appellant may prevail on an ineffective assistance claim by providing a record that affirmatively demonstrates that his counsel's performance was not based on sound trial strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). However, in almost all cases, the record on direct appeal is inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance. *See Bone*, 77 S.W.3d at 833; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In rare instances, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective motivations, if no reasonable trial strategy could justify trial counsel's conduct. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 102.

To satisfy the second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Andrews*, 159 S.W.3d at 102. Hidalgo has satisfied neither prong.

10

First, we note that the knife was properly admitted into evidence. Hidalgo claims that his trial counsel should have objected to the introduction of the knife and the awl on the basis of an insufficient foundation to demonstrate the relevance of these items. However, the foundation for admitting the knife was established through the testimony of Richman and O'Brien. Specifically, Richman testified that when he approached Hidalgo, Hidalgo shoved his hand into his pocket. Remembering that Hidalgo was charged with stabbing O'Brien, and fearing that Hidalgo might be going for a knife, Richman drew his weapon and ordered Hidalgo to place his hands on the car. According to Richman's testimony, while doing a routine search, he found the knife in Hidalgo's pocket. O'Brien had testified that Hidalgo reached into his pocket for the sharp instrument that he cut O'Brien with. This testimony, combined with Richman's testimony, introduced the possibility that the pocket knife was the weapon used by Hidalgo to stab O'Brien. Therefore, the knife tended to make more probable the fact that Hidalgo used a deadly weapon in his attack on O'Brien, establishing its relevance. Tex. R. Evid. 401. Although the argument for the relevance of the awl is weaker, Richman testified that he seized it after noticing it in plain sight in Hidalgo's truck because he felt that it might have been the weapon used in the assault. Richman stated that its characteristics seemed very close to the characteristics of the weapon used in the crime as described by O'Brien and the other witnesses and that it could have caused the wound to O'Brien's abdomen and the tear in his shirt. By proving that both items were in Hidalgo's possession and that either one could have been the weapon that appellant used and took with him after the aggravated assault, the State demonstrated relevance. *See id.* The facts that neither item was found at the scene of the

11

aggravated assault or that both were found in appellant's possession about a month after the aggravated assault would have gone to the weight, but not the admissibility, of the items.

Even if the knife and awl were inadmissible, allowing them to be admitted may have been part of a strategy by Hidalgo's trial counsel to establish reasonable doubt as to the deadly-weapon element of the crime charged. This potential strategy is reflected by the closing arguments of Hidalgo's counsel, who passed around the knife and awl to the jury and argued that the weapons were not capable of causing serious bodily injury or death given their particular characteristics. Hidalgo's trial counsel may have thought that the folding knife with a three- to four-inch blade and the awl would seem relatively harmless compared to the "sharp instruments" the jury may have been imagining. Because allowing admission of the knife and awl may have conceivably been part of Hidalgo's counsel's trial strategy to establish that those weapons were used in the crime but did not meet the statutory standard for a deadly-weapon finding, we cannot say upon this record that Hidalgo's counsel was constitutionally defective, or that he fell below an objective standard of reasonableness as a matter of law.

Even if in the interest of justice we were to address the second prong of the *Strickland* analysis, Hidalgo has offered nothing to show that the admission of these items had a prejudicial effect on the outcome. To the contrary, all the evidence presented in the case indicated that Hidalgo attacked O'Brien, that he attacked him with a weapon, and that the weapon he used was a deadly weapon. No controverting evidence was presented on any of these points. Consequently, we cannot say that the failure of Hidalgo's counsel to object to the admission of the knife and awl into evidence undermines confidence in the jury's guilty verdict, and as a result, the level of prejudice required for

12

a finding of ineffective assistance of counsel was not reached by allowing those items into evidence. We overrule Hidalgo's third point of error.

## CONCLUSION

Having overruled each of Hidalgo's points of error, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed:   December 15, 2006

Do Not Publish

13