

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00050-CR

_____

FELIPE RUBIO GASPAR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 22386

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

Noemi Jiminez,[1] her four children, and her current boyfriend, Pedro Guzman, were all sleeping in Jiminez's darkened bedroom. Awakened by Guzman's scream, Jiminez saw her former boyfriend, Felipe Rubio Gaspar,[2] on top of Guzman and thought Gaspar was hitting Guzman with his fists. She pulled Gaspar off of Guzman, but Gaspar "got up and kept just going back after [Guzman]." As the struggle between Gaspar and Guzman continued, it moved through various areas of the house, including the living room, where the lights had been turned on. When the two men returned to the living room, Jiminez noticed that Gaspar was holding a screwdriver and that Guzman was "drenched in blood" and holding a two-foot statue as a weapon. The fight ended when Gaspar left the premises.

Gaspar was indicted on charges of aggravated assault with a deadly weapon. After a jury trial, Gaspar was found guilty and sentenced to twenty years' imprisonment.[3] On appeal, Gaspar argues that there is legally and factually insufficient evidence to support the conviction and that the trial court erred in failing to allow a jury instruction on self-defense.[4] We affirm the conviction

---

[1] In the record, Jiminez is also spelled, "Jimenez." In this opinion, we use the "Jiminez" spelling.

[2] There is testimony that Gaspar and Jiminez once lived together as husband and wife.

[3] The sentence was to run concurrently with his sentence in cause number 06-10-00051-CR. Gaspar was also assessed a $10,000.00 fine and court costs of $436.00.

[4] Gaspar received permission to submit one brief for the two appeals (cause numbers 06-10-00050-CR and 06-10-00051-CR) he has pending before this Court.

because: (1) the evidence is legally sufficient to support the verdict; and (2) there is no evidence that Gaspar was acting in self-defense.

Under the authority of a very recent opinion where a plurality of the Texas Court of Criminal Appeals abolished the separate factual-sufficiency review, we do not address Gaspar's challenge to the factual sufficiency of the evidence.[5] *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010).

*(1)     The Evidence Is Legally Sufficient to Support the Verdict*

Gaspar and Jiminez had had an on-again, off-again relationship for several years. After the relationship finally ended, Gaspar began living in the house of Jesus Perez, within a mile of Jiminez, and Jiminez began a new romantic relationship with Guzman. Guzman, Israel Jiminez (Jiminez's father), and Nelson Rodriguez (her eleven-year-old son), all testified that, earlier on the day of the alleged assault, Gaspar came to the Jiminez property[6] and confronted Guzman, warning him to leave Jiminez alone and that he would regret "messing with" Jiminez.[7]

---

[5]With Judge Cochran joining the lead opinion and authoring a concurring opinion and Judge Womack concurring with the lead opinion and joining the concurrence, in *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision), a plurality of the Texas Court of Criminal Appeals abolished the factual-sufficiency review established by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny. The plurality and Judge Womack agreed that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks*, 2010 WL 3894613, at *1, 14. Since the Texas Court of Criminal Appeals has abolished factual-sufficiency review, we need not address the challenge to the factual sufficiency of the evidence.

[6]The property is owned by Jiminez's father, Israel Jiminez.

[7]Whether Perez was with Gaspar during the confrontation is disputed. Israel testified that Perez was there, while Perez denies any involvement.

After Perez and Gaspar got off work that day, the two traveled to a restaurant in nearby McKinney, Texas, and "had a few drinks." On returning to Perez's home, Gaspar "got on the phone and started arguing" with Jiminez. Perez believed Gaspar was arguing about "his kids, and . . . somebody being there with her." Gaspar indicated he was leaving because he had to "go do something over there." Gaspar invited Perez to go with him, but Perez declined saying, "I don't want no problems." Perez testified that Gaspar was drunk and angry that "the other guy was down there."

Later, when Gaspar returned to Perez's home, he told Perez that Gaspar had "wrecked the car" and asked Perez to help him hide it. Perez noticed that both the car and Gaspar were covered in blood, that one of the car's tires was "completely torn up," and that "the fender was way beyond repair, couldn't be fixed."

Responding to a 9-1-1 call, Officer Ron Alexander arrived at the Jiminez residence and saw blood droplets on the wheelchair ramp outside the home, "quite a bit of blood right there in the front of the door," and "blood smeared all over the front door, all over the screen door, a pretty good amount of blood." He testified that Guzman was lying on the floor, bleeding profusely and that he appeared to have been stabbed several times. Guzman had thirteen puncture wounds to his body, head, and face.

Shortly thereafter, the police arrived at Perez's residence. Alexander noticed "a little splatter of blood" on the glass of Perez's front door. Inside Perez's home, Alexander found

4

Gaspar asleep, saw a screwdriver that matched Jiminez's description on the floor beneath Gaspar's outstretched hand, and found a shirt and boots with blood on them. Gaspar was arrested and charged.

In reviewing the evidence for sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Based on the *Brooks* plurality's description of the new application of legal sufficiency review under *Jackson* as "rigorous" and its statement that the use by reviewing courts of the factual sufficiency standard in tandem with the legal sufficiency standard may have "skewed" the proper application of the *Jackson* standard, it appears that the high court is attempting to refocus the application of the legal sufficiency standard from the quantity to the quality of the evidence presented. *See Brooks*, 2010 WL 3894613, at **16–17 (Cochran, J., concurring).

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing

5

*Jackson*, 443 U.S. at 318–19).  We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution.  *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Gaspar was charged with aggravated assault with a deadly weapon.  The indictment alleges that Gaspar did

> then and there intentionally, knowingly, and recklessly cause bodily injury to Pedro Noris Guzman by stabbing him with a screwdriver and [Gaspar] did then and there use or exhibit a deadly weapon, to-wit:   a screwdriver during the commission of said assault.

On appeal, Gaspar argues that the evidence supporting his conviction is insufficient because the State failed to prove beyond a reasonable doubt that Gaspar, rather than Guzman, was the aggressor.  We disagree.

A person commits aggravated assault with a deadly weapon if he or she intentionally, knowingly, or recklessly causes serious bodily injury to another while using an object with the intent, or in such a manner that the object is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. §§ 1.07(a)(17)(B), 22.02 (Vernon Supp. 2010).

6

When Jiminez saw Gaspar "on top of" Guzman in the darkened room, the open blinds and door let in enough light that she could tell that Gaspar was the person attacking Guzman. Jiminez indicated that Gaspar was the aggressor because she repeatedly tried to pull Gaspar off of Guzman, but Gaspar "got up and kept just going back after [Guzman]." However, Jiminez admitted that she never saw Gaspar stab Guzman, that she did not see Gaspar holding a screwdriver until both men were in the living room, and that she "didn't actually know what was going on till later."

Rodriguez saw Gaspar stabbing Guzman and indicated that Gaspar was the aggressor and that he "wouldn't stop." Even after Guzman fell to the floor bleeding, Gaspar "tried to come back and keep [sic] on stabbing him."

Alexander testified that there was a lot of blood all over the house, particularly near the front door and that, when he arrived, Guzman was lying on the floor, bleeding profusely, appearing to have been stabbed several times.

Guzman had thirteen puncture wounds to his body, head, and face, but Guzman did not remember Gaspar stabbing him with a screwdriver. A screwdriver, matching the one Jiminez saw Gaspar holding, was found at the Perez residence, just beneath Gaspar's hand as he lay asleep. Remarkably enough, the screwdriver had Gaspar's DNA on it, but not Guzman's. Gaspar's boots and shirt both had Guzman's blood on them.

Gaspar had a single wound in his leg, but no evidence indicates Guzman caused the injury or was ever in a position to cause the injury. Even when Guzman was holding the statue, there is

no evidence he used it against Gaspar.  Rodriguez testified that Guzman was about to throw the statue, but when both he and Gaspar paused, Guzman put the statue down "and fell to the floor bleeding."

The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, and reconciliation of conflicts in the evidence is within the exclusive province of the jury.  *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994).  The jury may choose to believe some testimony and disbelieve other testimony.  *Wyatt*, 23 S.W.3d at 30.  Here, taking all the evidence into consideration and reviewing it in the light most favorable to the verdict, there is ample testimony and forensic evidence to support the jury's finding that Gaspar attacked Guzman and stabbed him with a screwdriver.  The evidence is legally sufficient to support the verdict.

*(2)* *There Is No Evidence that Gaspar Was Acting in Self-Defense*

Gaspar also contends that the trial court erred in denying his requested self-defense instruction.  The State argues that Gaspar failed to preserve this issue for appeal because he failed to either submit his requested instruction in writing or dictate it into the record.

In order to preserve error relating to the jury charge, there must either be an objection or a requested charge.  *Sanders v. State*, 69 S.W.3d 690, 692 (Tex. App.—Texarkana 2002, pet. dism'd, untimely filed); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007), art. 36.15 (Vernon 2006).  This Court has held that, to preserve error, "a request need only be sufficient to

8

call the trial court's attention to the omission in the court's charge." *Martin v. State*, 67 S.W.3d 340, 345 (Tex. App.—Texarkana 2001, pet. ref'd).[8] In *Arnwine*, this Court held that, despite Arnwine's failure to present his proposed charge in writing or dictate it into the record, the defendant's objection to the failure of the charge "to instruct the jury on the defense of necessity" was sufficient to preserve the issue for appeal because the record indicated "the trial judge understood Arnwine's objection to the lack of a charge on necessity and was aware of his request to include that charge." *Arnwine v. State*, 20 S.W.3d 155, 157–58 (Tex. App.—Texarkana 2000, no pet.).

Similar to *Arnwine*, the record in this case clearly indicates the trial court understood, or should have understood, the request of a self-defense instruction. The following exchange occurred between the trial court, the State, and Gaspar's counsel:

> STATE: In that case, Your Honor, the State would re-urge the objection, the self-defense claim that I made earlier. I just don't think there's a scintilla of evidence to suggest self-defense. There's -- there's argument by counsel and insinuation by counsel, but as the Court knows, that's not evidence.
>
> THE COURT: Okay, [Defense Counsel]?
>
> [Defense Counsel]: Your Honor, I think the fact that [Gaspar] was stabbed in the leg provides more than ample evidence to indicate that the jury could conclude that he was stabbed in the leg, number one. And, number two, that under those circumstances that he has a legitimate self interest in defending himself. . . .

---

[8]*Martin* is consistent with other Texas courts. *See Atkinson v. State*, 923 S.W.2d 21, 24 n.2 (Tex. Crim. App. 1996) ("so long as it calls attention to an error or omission"); *Brazelton v. State*, 947 S.W.2d 644, 647 (Tex. App.—Fort Worth 1997, no pet.); *Reyes v. State*, 910 S.W.2d 585, 592 (Tex. App.—Amarillo 1995, pet. ref'd); *Bell v. State*, 881 S.W.2d 794, 803–04 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (the request "need only put the trial court on notice of an omission or error").

> Having said that, there's also evidence to indicate that the screwdriver that was submitted into evidence was not, in fact, the weapon that was allegedly used in the original premises since there was no DNA evidence nor blood, conclusively, found on the screwdriver. That takes us back to the original scene where the altercation occurred. If no weapon was found and he enters in there and [Gaspar] was stabbed in the leg, then that gives rise to the possibility that he -- that the other party received the stab wounds in response.

Gaspar has properly preserved this issue for appeal.

A trial court's decision to deny a defensive issue in a jury charge is reviewed for an abuse of discretion. *Westbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *Reynolds v. State*, 227 S.W.3d 355, 371 (Tex. App.—Texarkana 2007, no pet.).

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Guilbeau v. State*, 193 S.W.3d 156, 159 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Before a defendant is entitled to a self-defense instruction, however, there must be some evidence, when viewed in the light most favorable to the defendant, that will support the claim. *Ferrel*, 55 S.W.3d at 591; *Hill v. State*, 99 S.W.3d 248, 251 (Tex. App.—Fort Worth 2003, pet. ref'd). Thus, entitlement to a self-defense instruction is predicated on the provision of some evidence that the defendant was authorized to use force against another. "[A]

defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007). A defendant need not testify in order to raise a defense. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.—San Antonio 2001), *aff'd*, 74 S.W.3d 23, 26 (Tex. Crim. App. 2002). Defensive issues may be raised by the testimony of any witness, even those called by the State. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the

defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). However, "if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue." *Ferrel*, 55 S.W.3d at 591.

Gaspar argues that the trial court should have included an instruction on self-defense in the charge, in light of the evidence raised on that issue. He directs our attention to the following evidence: (1) Gaspar was cut or stabbed in the leg from behind; and (2) only Gaspar's blood and DNA were found on the screwdriver. When the foregoing evidence is analyzed in light of the requirement that some evidence must be raised on each element of the defense, we conclude the trial court was correct in its decision that an instruction on self-defense was not warranted. Section 9.31 of the Texas Penal Code provides, in part, that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2010). Moreover, Section 9.32 of the Texas Penal Code provides:

> (a)      A person is justified in using deadly force against another:
> (1)      if the actor would be justified in using force against the other under Section 9.31; and
> (2)      when and to the degree the actor reasonably believes the deadly force is immediately necessary:

12

(A) to protect the actor against the other's use or attempted use of unlawful deadly force; or

(B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

TEX. PENAL CODE ANN. § 9.32(a) (Vernon Supp. 2010).

The record contains no evidence suggesting that Gaspar reasonably believed the use of force was immediately necessary to protect himself from the use or attempted use of unlawful force, or to prevent the commission of any of the offenses listed in Sections 9.31 or 9.32 of the Texas Penal Code. Instead, the evidence here suggests that Gaspar entered the Jiminez home and attacked a sleeping man without provocation. It could be inferred from the evidence that Guzman struck, or attempted to strike, Gaspar, possibly with the small statue or the screwdriver. However, it is undisputed that Gaspar was the aggressor from the moment he entered the Jiminez home until the time he left, and the evidence also reveals that Guzman seized the statue in order to defend himself from Gaspar's relentless attacks. Under these circumstances, Gaspar was not entitled to an instruction on self-defense. This point of error is overruled.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:     October 6, 2010
Date Decided:       November 5, 2010

13

Publish