

# IN THE
# TENTH COURT OF APPEALS

## No. 10-20-00052-CR

**ERIC LABREECE MACK,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

**From the 77th District Court
Limestone County, Texas
Trial Court No. 14464-A**

## MEMORANDUM  OPINION

The jury convicted Eric Mack in Counts 1 and 2 of the offense of harassment of a public servant, found the enhancement paragraphs to be true, and assessed punishment at 85 years confinement for each offense.  In Count 3, the jury convicted Mack of the offense of evading arrest with a previous conviction, found the enhancement paragraphs to be true, and assessed punishment at 20 years confinement.  We affirm.

## BACKGROUND FACTS

Kimberly DeCarlo was in her vehicle, and Mack approached the vehicle and got into an altercation with DeCarlo. DeCarlo's dog bit Mack, and Mack then bit DeCarlo. DeCarlo eventually put her car in gear to leave while Mack was hanging onto the vehicle. Mack fell off the car at the end of the driveway, and DeCarlo continued to try to leave. DeCarlo testified that as she was driving away, Mack jumped onto the hood of her vehicle and head-butted the windshield of her car. According to DeCarlo, Mack shattered the windshield with his head.

Officers Chad Owens and Jeffrey Steen, with the Mexia Police Department, responded to a call of a vehicle/pedestrian incident. When they arrived, a female was pointing at a house indicating the person hit by the vehicle was in the house. The front door of the house was ajar, and the officers observed blood on the door of the house. Officer Owens testified that they entered the residence because they believed someone in the house might be severely injured. When the officers entered the residence, they found Mack in the back bedroom, with a laceration on his forehead and bloody, leaning against an open window. The officers observed a sword within Mack's reach. Officer Owens stated that Mack did not comply with requests to show his hands and appeared agitated. Mack refused medical treatment and told the officers to leave. The officers went outside of the home to regroup and determine their course of action.

Officer Owens testified that when they went outside, they learned that Mack was a suspect in an assault. Officer Owens and Officer Steen then re-enter the home with the intent to detain Mack in order to investigate the assault. When they entered the house

the second time, Mack jumped out of the window and fled. Officer Owens pursued Mack. Officer Owens stated that Mack refused commands to stop and show his hands. Officer Owens testified that he observed Mack reach into the waistband of his pants and that he attempted to use his taser on Mack, but it did not work. Mack jumped over a fence and continued running from Officer Owens. Officer Steen was able to deploy his taser, and Mack fell to the ground.

The officers placed Mack under arrest, but he was uncooperative. Mack was kicking and resisting so that the officers had to carry him to place him in the patrol car. Officer Owens testified that he was trying to hold Mack's head so that he would not head-butt anyone, and Mack spit on Officer Owens. The officers were able to place Mack in the patrol car and transport him to the hospital so that his injuries could be assessed. When they arrived at the hospital, Mack continued his aggressive behavior. It took several officers and emergency medical technicians to move Mack from the patrol car to the hospital bed. Captain Johnny Brown, an EMT with the Mexia Fire Department, was assisting in trying to move Mack into a hospital bed. Captain Brown stated that Mack was fighting and trying to bite the officers and EMTs. Captain Brown testified that he was near Mack's head, and Mack spit in his face.

## JURY CHARGE

In three issues, Mack complains that the trial court erred in charging the jury. In the first and second issues, Mack argues that the trial court erred in denying his request for a self-defense instruction as to Counts 1 and 2 on harassment of a public servant. In

the third issue, Mack argues that the trial court erred in denying his request for a necessity instruction as to Count 3 on evading arrest with a prior.

When an appellant complains of jury charge error, we first determine whether the charge contained error. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *Landrum v. State*, 590 S.W.3d 640, 645 (Tex. App. —Waco 2019, pet. ref'd). If error exists, we then analyze the harm resulting from the error. *Id*. If the error was preserved by objection, any error that is not harmless will constitute reversible error. *Id*.

A defendant is entitled to a self-defense jury instruction when the issue is raised by the evidence, "whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). In evaluating the trial court's ruling, we view the evidence in the light most favorable to the defendant's requested submission. *Id*. A trial court errs in denying a self-defense instruction if there is some evidence, from any source, that will support the elements of self-defense. *Id*. A person generally is justified in using force against another in self-defense if, among other things, that person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31.

Self-defense is a "confession and avoidance" or "justification" defense, requiring that the defendant admit to the otherwise illegal conduct before he may assert the defense. *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007); *Fury v. State*, 607 S.W.3d 866, 876 (Tex. App. —Houston [14th Dist.] 2020, pet. ref'd). A defendant cannot

both flatly deny the charged conduct and invoke self-defense. *Gamino v. State*, 537 S.W.3d at 511-12; *Fury v. State*, 607 S.W.3d at 876. A defendant is not required to concede the State's version of the events in order to be entitled to a self-defense instruction. *Gamino v. State*, 537 S.W.3d at 512. Admitting to the conduct does not necessarily mean admitting to every element of the offense. *Id.*

Mack did not testify at trial. A defendant need not testify in order to raise a defense. *Gaspar v. State*, 327 S.W.3d 349, 356 (Tex. App. —Texarkana 2010, no pet.). Defensive issues may be raised by the testimony of any witness, even those called by the State. *Id.* Mack's trial attorney questioned both Officer Owens and Captain Brown to determine if Mack accidentally spit on them. His trial attorney questioned whether the spitting could have been an involuntary response. Although there is nothing in the record to show that Mack explicitly denied spitting on Officer Owens or Captain Brown, there is nothing in the record to show that Mack admitted to otherwise illegal conduct to be able to assert self-defense. The trial court did not err in denying an instruction on self-defense. We overrule the first and second issues.

In the third issue, Mack contends that the trial court erred in denying his requested instruction on necessity. Section 9.22 of the Texas Penal Code provides that conduct is justified if:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22. A reasonable belief is a belief that an ordinary and prudent person would hold in the same circumstances as the defendant. TEX. PENAL CODE ANN. § 1.07(a)(42). The confession and avoidance doctrine applies to the necessity defense, requiring a defendant to admit the conduct--both the act and the culpable mental state-- of the charged offense to be entitled to a necessity instruction. *Juarez v. State*, 308 S.W.3d 398, 399, 405 (Tex. Crim. App. 2010). There is nothing in the record before us to indicate Mack admitted to intentionally fleeing from a person he knew to be a peace officer. Moreover, there is nothing in the record to show that Mack reasonably believed he needed to flee to avoid imminent harm. There is nothing to suggest Mack was fleeing imminent harm.

Mack also argues that he was entitled to an instruction on necessity for the offense of harassment of a public servant. Mack was not entitled to the instruction because the record does not show he admitted to intentionally spitting on Officer Owens or Captain Brown. Mack's trial attorney seemed to argue that the spitting could have be accidental or involuntary. The trial court did not err in denying the instruction on necessity. We overrule the third issue.

## SUFFICIENCY OF THE EVIDENCE

In the fourth issue, Mack argues that the evidence is insufficient to support his conviction for evading arrest. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the

verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A person commits the offense of evading arrest if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04 (a). Mack specifically argues that the evidence is insufficient to show that a peace officer was attempting to lawfully arrest or detain him. He contends that the officers second entry into his home was illegal, and, therefore, his detention and arrest was also illegal.

In *Day v. State*, the Court held that "lawfully" as it appears in the evading arrest statute does not incorporate exclusionary rule principles. *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). We look at whether the attempted arrest or detention is lawful at the time the person flees. *Id*. There are no exceptions or defenses based upon the officer's conduct before or after the person flees. *Id*. Therefore, any illegal entry does not taint the detention or attempted arrest if it was lawful at the time Mack fled. We look at Mack's conduct, not the conduct of the officer. *See Day v. State*, 614 S.W.3d at 127.

Mack jumped out of the window when the officers entered the second time. While he was in the backyard Officer Owens attempted to detain him, and Mack fled. Mack refused to comply with the officer's commands to stop, and Officer Owens observed Mack reach into the waistband of his pants. Officer Owens attempted to tase Mack, but it was unsuccessful. Mack continued to flee from the officers and jumped over a fence.

Officer Skeen was able to tase Mack, and Mack fell to the ground. The officers then placed Mack under arrest.

Mack initially fled from the officers when he jumped out of his window. Mack then fled a second time once he was outside and asked to stop by the officers. Mack fled again after Officer Owens unsuccessfully attempted to tase him. Once outside of Mack's home, the officers had reasonable suspicion to detain Mack based upon Kimberly DeCarlo's report to the Mexia Police Department that Mack assaulted her. The detention was legal at the time Mack fled outside of his home. Viewing all of the evidence in the light most favorable to the verdict, the jury could have found that Mack committed the offense of evading arrest. We overrule the fourth issue.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Neill, and
     Justice Johnson
(Chief Justice Gray concurring)*
Affirmed
Opinion delivered and filed May 28, 2021
Do not publish
[CRPM]

*(Chief Justice Gray concurs. A separate opinion will not issue.)

