

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00100-CR

JOSEPH ANDREW WILCOX, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-21-28090

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Fannin County jury convicted Joseph Andrew Wilcox of aggravated assault with a deadly weapon. After it found the State's punishment enhancement allegations true, the jury assessed a sentence of twenty-five years' imprisonment. In his sole point of error on appeal, Wilcox argues that the trial court erred by failing to submit his requested jury instruction on the issue of self-defense. Because we conclude that Wilcox was not entitled to the instruction, we affirm the trial court's judgment.

I.      **Factual Background**

The evidence at trial showed that Wilcox assaulted Troy Minchey while Minchey was attempting to enter his mother's home. The question before us is whether this evidence also showed that Wilcox was entitled to a self-defense instruction.

Minchey testified that he was kicked out of his girlfriend's house and went to his mother's home because it had "been [his] home over the last 20 years," even though his mother had told him he was no longer welcome there. Minchey, who was carrying an overnight bag, knocked on the door several times and walked around the house to see if his mother, Donna Reynolds, was home. Even though Reynolds's vehicle was in the driveway, no one responded to Minchey's knocking, which lasted for twenty to thirty minutes. Minchey testified that he became worried about Reynolds's well-being because she had a history of drug overdoses. He did not have a key to the house and decided to gain entry by using his shoulder to pry open the front door. When he crossed the threshold, Minchey encountered Wilcox, who was carrying a homemade club.

2

Minchey told Wilcox, who was larger than him, that he was Reynolds's son, in case Wilcox thought he was an intruder. According to Minchey, Wilcox said that he did not care and "began flailing a wooden [club]." Minchey exited the house and went into the yard, but Wilcox swung the club and hit Minchey in the head, "dropp[ing] [him] to the ground." The assault was captured by the home's surveillance video camera. The recording showed that Minchey, who had no weapons, had walked back into the yard and was stepping away from Wilcox when he struck Minchey with the club, knocking him down. While Minchey was still on the ground, Wilcox struck Minchey with the club again at least eight times. Reynolds and her boyfriend, David Hoaglin, watched the beating, and Reynolds tried to intervene. Wilcox walked away for over a minute, but returned, got on top of Minchey, who was already on the ground, and continued his assault by hand. Minchey testified, "Once he puts the bat down and gets on top of me with both hands around my neck, he asked me to beg for my life twice." Wilcox then fled the scene.

Minchey, badly beaten, was left in the yard. When he tried to get up and walk, he fell back down to the ground. Eventually, Minchey was able to get to his phone and call 9-1-1. On the call, which was played for the jury, Minchey reported that Wilcox had beaten him with a weapon, he was bleeding from his head, and he needed an ambulance. Minchey told dispatchers that Wilcox "kept beating [him] and kept beating [him]." Jonathan McCann, a patrol sergeant with the Fannin County Sheriff's Office (FCSO), testified that he was dispatched to Reynolds's home and found Minchey with "fresh blood coming from . . . severe lacerations on his head." According to Randy Vasquez, an investigator with FCSO, Minchey was bleeding profusely, did

3

not have full functioning capability, and required stitches at the hospital. Minchey testified that he had to have eight stitches for his head injury and suffered "a bone chipped in [his] knee." Photos of Minchey's bloody injuries were shown to the jury.

McCann described the homemade weapon wielded by Wilcox as "a homemade wooden club," approximately three feet long and "[a] couple inches" thick. Both McCann and Vasquez testified that the club was a deadly weapon capable of causing serious bodily injury or death. McCann said that there were no other weapons at the scene. Vasquez testified that Wilcox's actions went beyond what was immediately necessary to protect himself because Wilcox continued to strike Minchey when he was already on the ground. Referring to the surveillance recording, Vasquez added, "There's even a point where you can see that [Wilcox] stops. [Reynolds and Hoaglin] try to stop him from it too, and [Wilcox] [i]s still continuing."

Vasquez said that, from statements made by Reynolds, Vasquez gathered that Minchey lived in Reynolds's home. McCann testified that Minchey's driver's license listed Reynolds's home as his address and that Reynolds said Minchey was no longer welcome but was not "legally evicted." During her testimony, Reynolds clarified that Minchey was not living with her at the time and that she lived in the home with Hoaglin and Wilcox.

Reynolds testified that Minchey had a history of heroin use, which made him "mean," and that his morning text messages led her to believe he was on drugs on the day of the incident. A week before the incident, Reynolds told Minchey, who had physically assaulted her in the past, that he was not welcome and that she would get a restraining order against him if he showed up at her house. Reynolds also said that Minchey had destroyed her property before and

4

that she was concerned for her safety and property when Minchey attempted to enter the home. Reynolds did not respond to Minchey's knocking because she hoped he would go away. According to Reynolds, Minchey was holding his grandmother's garden spade when he entered the front door.

Wilcox testified in his own defense. Wilcox did not respond to Minchey's knocking but said that he knew it was Minchey since he was the only person that would continue knocking for that long. Wilcox heard a metal scraping sound coming from the door latch, thought Minchey might have a knife, and decided to arm himself with the club. Wilcox said Minchey got through the door with the garden spade and that he hit Minchey with the club as soon as Minchey's foot crossed the threshold. Wilcox felt that grabbing the club when he saw the garden spade was reasonable and said, "[W]henever [Minchey] put his hands up, I hit him."

Wilcox said that he pushed Minchey until he fell over "and when he did, [Minchey] started calling [Wilcox] names and stuff, and [Wilcox] started swapping [sic] [Minchey] right on the side of his body" with the club. Wilcox said that he was not trying to cause serious bodily injury but was "trying to get the man that was busting into [his] house to stop." Although he testified that he was fearful and did what was necessary to protect himself, Wilcox admitted that Minchey threw the spade "a foot and a half away from the front door" and that, on the video, Minchey did not have the spade while Wilcox was beating him with the club. Wilcox denied causing Minchey serious bodily injury. Although he said he was protecting himself and others, Wilcox admitted that he fled the scene, leaving Reynolds behind.

5

After hearing this evidence, the trial court denied Wilcox's requested self-defense instruction.

## II. Standard of Review

Wilcox argues that the trial court erred by omitting his requested jury instruction on self-defense. We review this claim "under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)." *Graves v. State*, 452 S.W.3d 907, 910 (Tex. App.—Texarkana 2014, pet. ref'd). "We first determine whether error exists." *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "If there is no error, our analysis ends." *Id.* (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

"Regardless of the strength or credibility of the evidence, a defendant is entitled to an instruction on any defensive issue that is raised by the evidence." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). "A defensive issue is raised by the evidence if there is sufficient evidence to support a rational jury finding as to each element of the defense." *Id.* (citing *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007)). "We view the evidence in the light most favorable to the defendant's requested defensive instruction." *Id.* (citing *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). "A trial court errs to refuse a self-defense instruction if there is some evidence, viewed in the light most favorable to the defendant, that will support its elements." *Id.*

The State charged Wilcox with aggravated assault with a deadly weapon. The use of deadly force in self-defense is justified by Section 9.32 of the Texas Penal Code, which states, in relevant part, the following:

(a) A person is justified in using deadly force against another:

(1) if the actor would be justified in using force against the other under Section 9.31; and

(2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:

(A) to protect the actor against the other's use or attempted use of unlawful deadly force . . .

. . . .

(b) The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against whom the deadly force was used:

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation . . . .

TEX. PENAL CODE ANN. § 9.32 (a)–(b).

## III. Wilcox Was Not Entitled to a Self-Defense Instruction

"[I]f the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue." *Gaspar v. State*, 327 S.W.3d 349, 356 (Tex. App.—Texarkana 2010, no pet.) (quoting *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001)). "Deadly force is 'force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.'" *Rodriguez v. State*, 629 S.W.3d 229, 236 (Tex. Crim. App. 2021) (quoting TEX. PENAL CODE ANN. § 9.01(3)). "In the context of self-defense, actual deadly force is not required; rather,

7

apparent danger may suffice." *Id.* (citing *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020)).

Section 9.32's "'reasonably believes' language contains subjective and objective components." *Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021). "A defendant must subjectively believe that another person used or attempted to use . . . deadly force (Section 9.32) against the defendant and that the defendant's use of unlawful or deadly force in response was immediately necessary." *Id.* (citing *Semaire v. State*, 612 S.W.2d 528, 530 (Tex. Crim. App. [Panel Op.] 1980)). "Second, a defendant's subjective belief must be reasonable." *Id.* "A reasonable belief is one held by an 'ordinary and prudent man in the same circumstances as the actor.'" *Id.* (citing TEX. PENAL CODE ANN. § 1.07(a)(42)). Therefore, "while the reasonableness of [the] defendant's belief . . . is *viewed* from the defendant's standpoint at the time he acted[,]" *Benavides v. State*, 992 S.W.2d 511, 521 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (emphasis added), it is "*measured* by the objective standard of an 'ordinary and prudent man[,]'" *Echavarria v. State*, 362 S.W.3d 148, 154 (Tex. App.—San Antonio 2011, pet. ref'd) (emphasis added).

"In certain situations, an actor's subjective belief is presumed reasonable," including in circumstances where the victim "unlawfully and with force entered" the actor's habitation. *Lozano*, 636 S.W.3d at 32 (quoting TEX. PENAL CODE ANN. § 9.32(b)). Yet, "[b]y its own terms, the presumption applies under Section 9.32(b) *only if* the defendant *first* harbors a *subjective belief* that the use of deadly force was *immediately necessary* to defend himself from *another's*

8

*use or attempted use of deadly force*."[1]  *Id.* at 33 (emphasis added).  We turn, therefore, to these "only if . . . first" threshold matters.

Viewing the evidence in the light most favorable to Wilcox requires us to find that Minchey unlawfully entered the habitation while holding a garden spade.  A garden spade is not a deadly weapon, per se, but could be considered one if its manner of use or intended use could cause Wilcox serious bodily injury.  Here, nothing showed that Minchey attempted to make a deadly weapon of the garden spade, nor was there testimony that Wilcox believed the garden spade would be used to attack a person.[2]  *See Oestrick v. State*, 939 S.W.2d 232, 238 (Tex. App.—Austin 1997, pet. ref'd) (victim never used or attempted to use the baseball bat in a way that could be the basis of a reasonable belief by appellant that his use of deadly force was immediately necessary).  When asked what Minchey was "attempting to do with that metal object," Wilcox responded, "I know he got in the door with it.  But . . . past that, I have no idea." Also, there was no evidence that Minchey advanced toward Wilcox with the garden spade or that, after the spade was abandoned, Wilcox believed Minchey's fists could be considered deadly weapons, given his stature.  As a result, nothing showed that Wilcox subjectively believed Minchey would use deadly force against him at the time Wilcox used deadly force.

Moreover, even presuming that Wilcox's initial use of deadly force was reasonable when Minchey entered the habitation with force, the use of deadly force is justified "*to the degree* the

---

[1]Under the unique facts of this case, viewing the events from Wilcox's standpoint requires consideration of his knowledge that the person trying to enter the home was Reynolds's son, a person whom he knew.

[2]While Wilcox said he was generally fearful, the record does not show that he feared Minchey would use deadly force.  Likewise, while there was testimony that Minchey had assaulted Reynolds in the past, there is no testimony that the past assault involved deadly force.

9

actor reasonably believes the deadly force is *immediately necessary*." TEX. PENAL CODE ANN. § 9.32(a)(2) (emphasis added); *Lozano*, 636 S.W.3d at 33. "Self-defense implies defensive and not offensive acts. When the acts of an accused cease to be defensive and take on the offensive, then he becomes the aggressor and is no longer acting in self-defense." *Witty v. State*, 203 S.W.2d 212, 218 (Tex. 1947); *see Gibson v. State*, 202 S.W.2d 236, 237 (Tex. 1947) (the acts constituting self-defense "must not exceed the bounds of defense and prevention. There must be an apparent necessity to ward off by force an unlawful act. It is a right based upon necessity."); *see also Lozano*, 636 S.W.3d at 34 (noting that defendant "might have shot [victim] once in self-defense, then continued shooting even though he knew [victim] was no longer a threat").

Here, Wilcox admitted that Minchey had abandoned the garden spade by the front door and walked back into the yard. The surveillance footage shows that Minchey had no weapon and retreated until he was close to the fenced perimeter of the property. Any threat had subsided, at the latest, when Minchey fell to the ground outside of the home without a weapon.[3] Nothing showed that Minchey, who was much smaller in stature compared to Wilcox, posed any threat of deadly force while on the ground. Even so, Wilcox continued to beat him with the club at least eight times. As a result, the evidence showed that Wilcox became the aggressor. Simply put, any presumption of reasonableness had vanished.

Based on the facts of this case, we find that Wilcox did not clear either the subjective or the objective component required by *Lozano* to obtain a jury instruction on self-defense. *See*

---

[3]*See Graves v. State*, 452 S.W.3d 907, 911 (Tex. App.—Texarkana 2014, pet. ref'd) (finding self-defense instruction not warranted when initial aggressor was unarmed and was shot while backing away from defendant); *Mitchell v. State*, 590 S.W.3d 597, 605 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (collecting cases).

*Lozano*, 636 S.W.3d at 32; *Dearborn v. State*, 420 S.W.3d 366, 378 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that defendant not entitled to self-defense instruction where evidence showed victim armed with nothing other than fists and noting blows with fists not typically considered deadly force). For this reason, we conclude that the trial court did not err in refusing to submit the instruction. As a result, we overrule Wilcox's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted: February 13, 2023
Date Decided: March 17, 2023

Do Not Publish